[Cite as *State v. Minkowski*, 2014-Ohio-5593.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                      Court of Appeals No. L-13-1274

     Appellee                                  Trial Court No. CR0201302153

v.

Jessika Minkowski                           **DECISION AND JUDGMENT**

     Appellant                                 Decided:  December 19, 2014

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and Kathryn J. T. Sandretto, Assistant Prosecuting Attorney, for appellee.

Neil S. McElroy, for appellant.

* * * * *

**JENSEN, J.**

**{¶ 1}** Appellant, Jessika Minkowski, appeals from the five-year prison sentence she received in the Lucas County Court of Common Pleas after pleading guilty to one count of felonious assault, a felony of the second degree.  She now appeals with two assignments of error.

Assignment of Error no. 1:  The trial court violated Ms. Minkowski's Equal Protection Rights as guaranteed by the 14th Amendment to the United States Constitution when the court considered Ms. Minkowski's gender when imposing sentence.

Assignment of Error no. 2:  The trial court violated R.C. 2929.11(C) when the court considered Ms. Minkowski's gender when imposing sentence.

## Statement of Facts

{¶ 2} On July 16, 2013, Minkowski was indicted on one count of felonious assault in violation of R.C. 2925.11(A), a felony of the second degree.  Minkowski initially pled not guilty to the charge, but later changed her plea to guilty after reaching a negotiated plea agreement with the state.  Pursuant to the plea agreement, Minkowski agreed to plead guilty as charged, and in exchange, the state agreed that if she were sentenced to prison, the sentence would be capped at five years.

{¶ 3} The trial court was informed of the plea agreement at a September 30, 2013 plea hearing.  After the plea agreement was stated on the record, the trial court asked, "Is it * * * your understanding if the court at the original sentencing does not grant community control but sentences you to the state penitentiary, the sentencing options start off at a minimum of 2 years or 3 years or 4 years to a maximum of 5 years, the court is bound by that recommendation, is that your understanding?"  Appellant answered in the affirmative.

**{¶ 4}** When asked what happened that caused her to plead guilty, appellant admitted that she knowingly caused serious physical harm to the mother of her husband's children by hitting her in the face several times while at a bar. The state then added to the record the following statement:

> The state would merely add that had we proceeded to trial multiple witnesses would have indicated that the victim was unable to defend herself because she was flat on the ground with the defendant sitting on her pummeling her * * * and that the injuries included a broken nose which caused rhinoplasty surgery; a deviated septum, there had to be surgery; the broken orbital socket for which there still needs to be surgery; and a dislocated jaw.

**{¶ 5}** At the November 14, 2013 sentencing hearing, the court indicated that it had read numerous letters submitted on behalf of both appellant and victim. The court further indicated that it had reviewed photographs of the injuries caused by appellant. Appellant apologized to the victim and her family. Because this was appellant's first offense, her counsel asked the court to consider community control.

**{¶ 6}** The court then indicated the matter was "being held pursuant to House Bill 86 and we only take into consideration those matters which remain constitutional and all other statutes and rules which we must consider." The court further stated,

> This court has been on the bench since your birth, the court was also a former trial lawyer and I have dealt for most of the time I [have] been a

lawyer and judge with offenses of violence. [We've] seen an escalation. There was a time when a woman would never do the kind of things that are done by certain women in this day and age, and it's demeaning to all of us. But there's a violence factor in women now that men used to carry the name thug, there's some women, and you fall in that category, who are true thugs in society. The court listened to the evidence * * * but the court would have never seen unless it had been offered at the time of the sentence, the kind of violence that was perpetrated. Your lawyer, and I appreciate what he is saying, but I don't agree with him, minimizing the time frame, nineteen seconds. And those 19 seconds you were very violent, very aggressive, very destructive. It's almost surprising you didn't have either brass knuckles or something in your hand, because the power that you utilized to not – you just can't even say pummel, this is not a bar fight, this is a vicious, violent attack on another person. The force that you used, you as a woman who have to be so delicate when you do tattoos, have to be so delicate when you do piercings, so you know better than anyone the strength and the delicacy of the face and any part of the body, because bruising is not what you want. In this case you hurled upon that woman, I've never seen that kind of violence, and I have been in the system a long time, ever seen the kind of violence you perpetrated on her in 19 seconds. You came in there and we know * * * this wasn't spontaneous. This was

rage that you have in you. And what you did to her, that's why we are sending these pictures and making it part of the record. * * *The disfigurement, the violence, the broken orbital socket, the broken – and even the word broken isn't appropriate. It is like the crushing of her face. I am surprised that she has been able to retain her beauty after all that, because she's had surgery, but she has said something else, that this we see consistently with these violent attacks * * * and that is the internal injuries, the things that no one else can see. The fright, the emotional destruction that can occur * * *.

And so when we look at all of these matters, this is your first felony offense, but then we can name off many people who come before courts on a first offense and when it is so atrocious and so violent and so thoughtless of another human being of what they are doing, then that presumption isn't rebutted, because this attack in those few seconds you did what you wanted to do, you came there and you – it's just like you turned on that woman * * * It was breathtaking in the sense that I see – I've seen everything that is tragically imaginable that people do to each other, but when I saw that, it took my breath away, because your hands, and remember that, these are the hands that are delicate, the tattooing, the art, it's an art * * * and you are considered an artist. You're also a thug. And what you did with those fingers, delicately with your fists, that woman could have died based on

those injuries. That woman was – she was admitted to the hospital. And I don't care what you – your emotion is about each other. Neither of you would deserve that kind of violence.

And then we look at all of these matters pursuant to statute and rule and we've looked at the law and we've read the case law, the presumption clearly has not been rebutted. We further find that pursuant to statute and case law that the shortest prison term possible will clearly demean the seriousness of the offense and will not adequately protect the public, because you've displayed now just like that the violence and the rage that you can do * * *.

{¶ 7} The trial court then imposed a five-year term of incarceration and a three-year term of mandatory postrelease control.

**First Assignment of Error**

{¶ 8} In her first assignment of error, appellant argues that the trial court considered her gender when fashioning a sentence in violation of the Equal Protection Clause of the Fourteenth Amendment to the United Stated Constitution. Specifically, appellant asserts that the trial court noted her behavior in this case was "demeaning to all women."

{¶ 9} The Equal Protection Clause provides that "[n]o State shall * * * deny to any person within its jurisdiction the equal protection of the laws." Fourteenth Amendment to the U.S. Constitution. "The Equal Protection Clause Prevents states from treating

people differently under its laws on an arbitrary basis." *State v. Williams*, 88 Ohio St.3d 513, 530, 728 N.E.2d 342 (2000), citing *Harper v. Virginia State Bd. Of Elections*, 383 U.S. 663, 681, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (Harlan, J., dissenting).

{¶ 10} In *State v. Peoples*, 102 Ohio St.3d 460, 2004-Ohio-3923, 812 N.E.2d 963, the Supreme Court of Ohio explained that a court "need not even reach the equal protection issue if all offenders in a class are treated equally." *Id.* at ¶ 6. Here, the appellant has failed to demonstrate that the trial court treated her any differently than any other offender. Thus, we find no merit in her first assignment of error. Appellant's first assignment of error is found not well-taken.

**Second Assignment of Error**

{¶ 11} In her second assignment of error, appellant argues that the trial court violated R.C. 2929.11(C) when it considered her gender when fashioning a sentence.

{¶ 12} Our review of felony sentencing cases is governed by R.C. 2953.08(G)(2) which provides:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its

7.

discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revision Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶ 13} We initially note that appellant's sentence is within the statutory range for a felony of the second degree; R.C. 2929.14(A)(2) provides that "[f]or a felony of the second degree, the prison term shall be two, three, four, five, six, seven, or eight years."

{¶ 14} As to our analysis under R.C. 2953.08(G)(2)(b), R.C. 2929.11(C) precludes sentencing an offender based upon race, ethnic background, gender, or religion. Appellant asserts the trial court "ignored" R.C. 2929.11(C) when it fashioned a sentence for appellant. We disagree.

{¶ 15} During the sentencing hearing, the trial court mentioned appellant's gender. And, as argued in appellant's brief, the trial court noted that appellant's actions were "demeaning to all women" and that it had seen an "escalation" in violence while serving on the bench. However, it does not appear from our review of the hearing transcript, that the trial court considered appellant's gender as a *basis* of sentencing in violation of R.C. 2929.11(C). Rather, the trial court explained that appellant's actions allowed her to categorize and ultimately sentence appellant not as a "woman" but as a "true thug."

8.

Nothing in R.C. 2929.11(C) precludes sentencing based upon the latter. For this reason, appellant's second assignment of error is not well-taken.

{¶ 16} For the reasons set forth above, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.         _____
                                                              JUDGE
Thomas J. Osowik, J.

                                                    _____
James D. Jensen, J.                                         JUDGE
CONCUR.

                                                    _____
                                                              JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.