[Cite as *State v. Carr*, 2021-Ohio-1983.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2020-12-129 |
| | : | O P I N I O N |
| - vs - | | 6/14/2021 |
| | : | |
| VINCENT P. CARR, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2020-04-0505

Michael T. Gmoser, Butler County Prosecuting Attorney, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Repper-Pagan Law, Ltd., Christopher J. Pagan, 1501 First Avenue, Middletown, Ohio 45044, for appellant

**S. POWELL, J.**

{¶ 1} Appellant, Vincent P. Carr, appeals his conviction in the Butler County Court of Common Pleas after he pled guilty to one count of trafficking in hashish. For the reasons outlined below, we affirm.

{¶ 2} On October 27, 2020, Carr, who is Caucasian, pled guilty to one count of trafficking in hashish in violation of R.C. 2925.03(A)(1), a third-degree felony. The charge

included a forfeiture specification, pursuant to R.C. 2941.1417 and 2981.04, that required Carr to forfeit $2,766 as proceeds of the offense. Prior to accepting Carr's guilty plea, the trial court addressed Carr personally and stated, in pertinent part, the following:

> You're going to plead guilty to one count. It is a third-degree felony. As a result of conviction, there is a possibility that you would be placed on community control. There is also a possibility that you would be sent to prison.
>
> If you're placed on community control, you'll be under the supervision of the probation department for a period of time of up to five years. Under that supervision, you would have rules you would have to follow. If you didn't follow those, you could have extra rules added, you could have the length of time of supervision extended, or in the worst case scenario, you would have community control revoked, and then you would be sent to prison.

{¶ 3} Continuing, the trial court stated:

> If you are sent to prison, either initially at sentencing or as a result of revocation of community control, you would be given a specified term or length of time to serve. That term would be somewhere between 9 months and 36 months. After completing that term of imprisonment, you would then face the possibility of being placed on three years of post-release control. That would be optional. It would be at the discretion of the parole authority.
>
> If they decided to place you on that, you would be under their supervision when you left prison. You would have rules you would have to follow. If you didn't follow those, you could be sent back to prison for an additional amount * * * totaling up to one-half of your initial sentence. If you violated those rules by committing a new offense, you could also be convicted of that and sentenced for that, in addition to any time you would serve for violating those rules of supervision.

{¶ 4} Following this advisement, the trial court asked Carr if he understood. Carr responded, "Yes, Your Honor." The trial court also asked Carr if he understood the charge against him and the maximum possible penalty that he faced. Carr again responded, "Yes." The trial court then reviewed the plea form with Carr. During this review, the trial court advised Carr of the following:

I'm going to review with you the form you've signed. It sets forth that one charge, which is Count III. It is trafficking in hashish. It is a third-degree felony. It carries with it a maximum possible prison sentence of 36 months, and a maximum possible fine of $10,000. There is the potential of a driver's license suspension. But I will not impose that. Post-release control, again, is discretionary for a possible period of three years.

{¶ 5} After reviewing the plea form with Carr, the trial court asked Carr if he had read, signed, and discussed the plea form with his attorney. Carr responded, "Yes" to all three questions. Carr also answered "Yes" when asked by the trial court if he understood what the plea form said and whether Carr understood the effect of signing the plea form. Following this exchange, the trial court accepted Carr's guilty plea upon finding the plea was knowingly, intelligently, and voluntarily entered. The trial court then scheduled the matter for sentencing.

{¶ 6} On December 8, 2020, the trial court held a sentencing hearing. During this hearing, but prior to issuing its sentencing decision, the trial court, without prompting from either party, stated:

What I'm struggling with is balance, I guess. I don't want to get into a big societal spiel about disproportionate sentences, and proportionate sentences, and backgrounds. And I guess I could get into the term of "white privilege" if I wanted to go down that road. And those are all kinds of things swirling around here.

{¶ 7} After noting that Carr, whose father is a physician and whose mother is a nurse, was somebody "with almost no record" outside of a few minor drug offenses as a juvenile, the trial court stated:

But in this case, seemingly – I mean, this is a – not elaborate drug trafficking operation necessarily. But you've got a large amount of hashish here coming in from Los Angeles. You've got apparently some third person involved besides you and [your co-defendant], Mr. mad chemist guy here. And besides the two of you, you've got some other guy involved apparently to shield yourself. You hoped, I guess, it would shield yourself from detection if you had this sent to somebody else.

{¶ 8}   Continuing, the trial court stated:

> Large amount being sold, kind of wholesale by you.  You were, like the, I'll say, big wholesaler.  And maybe big is a wrong expression.  But, apparently, you organized this from California.  Had it shipped to somebody else.  You then transported it to [your codefendant], who was going to do whatever he did on the retail level, I suppose.  Kind of stay behind the scenes, keep your hands clean.  You know, that's a very serious operation.

{¶ 9}   Later, after again noting that it was a "sizable amount of hashish" that Carr pled guilty to trafficking, the trial court stated:

> With that kind of situation, even though your record is not bad, it just seems – I mean, what I'm faced with basically is a young man who's got – and I don't want to penalize somebody for coming from an upper middle class family.  And I don't want to advantage somebody from [coming] from an upper class – or upper middle class, let's say – professional level, because those are the old sociological terms.  * * * But whatever you want to call that.  Whatever.  We're talking about a doctor here.  We're talking about a doctor father and a nurse mother.  And you know, the – what most of us would consider today to be kind of an upper class.

{¶ 10} The trial court then stated:

> I don't want to penalize, neither do I want to advantage anybody from whatever situation, socioeconomic background, demographic background that person comes from.  So what I'm left with here is a very, very young man, just, you know, 18 years old, I guess, when this got going; 19 at this point in time.  But very young, very little record, but just jumping right in to some just extraordinarily illegal and seemingly easy way to make a lot of money without having to work at a regular job.  And I can't find that a proper response to that would be to place that person on community control.

{¶ 11} Following these statements, Carr's trial counsel interjected and moved the trial court for a continuance so that Carr could submit a memorandum outlining "all of the arguments in light of the recidivism factors and the seriousness factors."  The trial court denied this request.

{¶ 12} Moving then to its sentencing decision, the trial court stated that it had

considered (1) the record; (2) the "overriding purposes of felony sentencing;" (3) the necessary "serious and recidivism factors;" (4) the "information contained in the pre-sentence investigation report;" and (5) "any and all statements" made at the sentencing hearing prior to issuing its decision. The trial court then sentenced Carr to the minimum allowable nine-month prison term for the offense of third-degree felony trafficking in hashish, minus two days of jail-time credit. The trial court also ordered Carr to pay court costs and a mandatory $5,000 fine. The trial court further notified Carr that he was subject to an optional three-year postrelease control term upon his release from prison.

{¶ 13} After the trial court imposed its sentence, Carr's trial counsel objected to the trial court's sentencing decision. In support of this objection, Carr's trial counsel argued that it was improper for the trial court to use "socioeconomic arguments in sentencing [his] client." To this, the trial court stated:

> Okay. That's all. But I would note – let me say this. What I – in saying that, what I said is I was doing everything in my power to not be influenced by those very things. And that's exactly what I think I did.

The trial court then stated that it tries to "steer away" from considerations regarding an offender's socioeconomic status and demographic background "as much as possible" when deciding on what sentence should be imposed upon the offender. The sentencing hearing was then concluded, and the trial court issued its judgment of conviction entry. Carr now appeals his conviction, raising two assignments of error for review.

{¶ 14} Assignment of Error No. 1:

{¶ 15} THE TRIAL COURT UNLAWFULLY CONSIDERED RACE AND WHITE PRIVILEGE IN ITS SENTENCING DETERMINATION.

{¶ 16} In his first assignment of error, Carr argues the trial court erred by sentencing him to prison rather than placing him on community control. To support this claim, Carr

argues the trial court improperly considered his race, a Caucasian, and the concept of "white privilege" in reaching its sentencing decision. We disagree.

{¶ 17} "[A]n appellate court does not review the sentencing court's decision for an abuse of discretion." *State v. Scott*, 12th Dist. Clermont Nos. CA2019-07-051 and CA2019 07-052, 2020-Ohio-3230, ¶ 54, citing *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 10. "It is instead the standard of review set forth in R.C. 2953.08(G)(2) that governs all felony sentences." *State v. Watkins*, 12th Dist. Preble No. CA2020-03-005, 2021-Ohio-163, ¶ 48, citing *State v. Crawford*, 12th Dist. Clermont No. CA2012-12-088, 2013-Ohio-3315, ¶ 6; and *State v. Julious*, 12th Dist. Butler No. CA2015-12-224, 2016-Ohio-4822, ¶ 8 ("[a]s with all felony sentences, we review this sentence under the standard of review set forth in R.C. 2953.08[G][2]"). Pursuant to that statute, this court may increase, reduce, "or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing," if this court clearly and convincingly finds either of the following:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

{¶ 18} "R.C. 2953.08(G)(2)(b) therefore does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *State v. Jones*, Slip Opinion No. 2020-Ohio-6729, ¶ 39. However, as set forth in R.C. 2929.11(C), "[a] court that imposes a sentence upon an offender for a felony shall not base the sentence upon the race, ethnic background, gender, or religion of the offender." This statute "bars a trial court from considering race and ethnic background when sentencing an offender," *State v. Chavez*,

12th Dist. Butler No. CA2015-11-195, 2016-Ohio-8450, ¶ 22, a violation of which constitutes one of the ways in which "a sentence may be 'otherwise contrary to law' under R.C. 2953.08(G)(2)(b)." *Jones* at ¶ 49 (Fischer, J., concurring); *State v. Gwynne*, 158 Ohio St.3d 279, 2009-Ohio-1734, ¶ 61 ("[s]urely, a criminal sentence that was based upon the offender's race, ethnic background, gender, or religion would be 'contrary to law'") (Donnelly, J., dissenting).

{¶ 19} This occurs in instances where the trial court considers the offender's race, ethnic background, gender, or religion as a *basis* for the trial court's sentencing decision. *See e.g. State v. Minkowski*, 6th Dist. Lucas No. L-13-1274, 2014-Ohio-5593, ¶ 15 (no violation of R.C. 2929.11[C] where the trial court did not consider appellant's gender "as a *basis*" for its sentencing decision, only that appellant's actions were "demeaning to all women" given that appellant had acted as a "true thug"). This is because "[a] sentence 'based upon' one or more [of those] factors necessarily assumes a conscious and deliberate consideration of those factors when meting out punishment for an offender." *State v. Sherman*, 8th Dist. Cuyahoga No. 97840, 2012-Ohio-3958, ¶ 45.

{¶ 20} Carr argues the trial court erred by sentencing him to prison rather than placing him on community control when considering it "candidly admitted that white privilege swirled around the case," thereby conclusively establishing that considerations regarding his race, or, more specifically, his "*whiteness*," was "influential, if not dominant, in the court's balancing of sentencing factors." (Emphasis sic.) However, while the trial court's commentary was certainly unnecessary given that such commentary came completely unsolicited by either Carr or the state, Carr's reading of what the trial court actually stated is taken out of context. That is to say, while the trial court admittedly did state "things" like "disproportionate sentences, and proportionate sentences, and backgrounds," which included the term "white privilege," were "swirling around" this case, the trial court prefaced

those comments by stating that it *did not* "want to get into a big societal spiel," and that it *did not* want "to go down that road."

{¶ 21} The trial court also stated that it was "doing everything" in its power "to *not* be influenced by those very things" and that it tries to "steer away" from those considerations "as much as possible" when deciding on what sentence should be imposed upon any defendant that appears before it. (Emphasis added.) After a thorough review of the record, we believe the trial court did just that in this case. Therefore, contrary to Carr's claim, when reviewing the trial court's comments in their entirety, and when taking those comments in their proper context, we find it clear that the trial court did not use Carr's race and/or the concept of "white privilege" as a basis for its decision to sentence Carr to prison rather than placing him on community control. The trial court, in fact, did the exact opposite by specifically stating that it had made a concerted effort to ignore Carr's race and the concept of "white privilege" when issuing its sentencing decision despite the fact that those issues were, to some extent, "swirling around" this case. Carr's claim otherwise lacks merit.

{¶ 22} In light of the foregoing, because the trial court did not violate R.C. 2929.11(C) by using Carr's race and the concept of "white privilege" as a basis for its sentencing decision, the trial court's decision to sentence Carr to prison rather than place Carr on community control was not contrary to law under R.C. 2953.08(G)(2)(b). *See, e.g., State v. Stephens*, 11th Dist. Portage No. 2018-P-0090, 2019-Ohio-3150, ¶ 26 (trial court did not err by ordering appellant to serve a prison sentence rather than community control where the trial court noted that "the State may have requested a harsher sentence if [appellant] were a man" because, "[w]hile the court's comments on this issue may have been unnecessary, they do not demonstrate that the court based its sentence on gender" in violation of R.C. 2929.11[C]); *State v. Alridge*, 6th Dist. Sandusky No. S-15-001, 2015-Ohio-4064, ¶ 25 (trial court did not err by sentencing appellant to four years in prison where

appellant "provided no evidence to suggest that race or gender played any role in the trial court's sentence" in violation of R.C. 2929.11[C]); *State v. Hodge*, 5th Dist. Muskingum No. 09 CA 23, 2010-Ohio-2717, ¶ 21 (trial court did not err by sentencing appellant to seven years in prison where the record was devoid of any evidence indicating appellant "was sentenced based on his race, ethnic background, gender or religion" in violation of R.C. 2929.11[C]); and *State v. Nance*, 8th Dist. Cuyahoga No. ¶ 38 (the trial court did not err by sentencing appellant to 33-years-to-life in prison where "the court at no time indicated that it was imposing a harsher sentence upon the defendant due to his race" in violation of R.C. 2929.11[C] "nor can that fairly be inferred from the record when it is read in context"). Therefore, finding no merit to any of Carr's claims raised herein, Carr's first assignment of error lacks merit and is overruled.

{¶ 23} Assignment of Error No. 2:

{¶ 24} CARR'S GUILTY PLEA WAS INVALID UNDER DUE PROCESS.

{¶ 25} In his second assignment of error, Carr argues his guilty plea was not knowingly, intelligently, and voluntarily entered since the trial court failed to advise him of the maximum possible penalty he faced as required by Crim.R. 11(C)(2)(a). We again disagree.

{¶ 26} Carr argues his guilty plea was invalid since the trial court completely failed to advise him of the possible consequences under R.C. 2929.141(A)(1) if he were to commit a new felony after he was released from prison and placed on postrelease control. However, while it is true that Crim.R. 11(C)(2)(a) required the trial court to advise Carr of the maximum possible penalty that he faced, "[a]ppellate courts have consistently held that Crim.R. 11(C)(2)(a), notice of the maximum penalty involved, does not require a trial court to inform a defendant entering a guilty plea of the R.C. 2929.141 consequences for violating post-release control." *State v. Betts*, 4th Dist. Vinton No. 17CA706, 2017-Ohio-8595, ¶ 24,

- 9 -

citing *State v. Turner*, 8th Dist. Cuyahoga No. 101578, 2015-Ohio-1148, ¶ 7.

{¶ 27} We agree and similarly conclude that a guilty plea is not invalid where the trial court did not notify a defendant who was not on postrelease control of the possible consequences the defendant faced under R.C. 2929.141(A)(1) if the defendant committed a new felony after being released from prison and placed on postrelease control. *Compare State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, ¶ 21 ("Crim.R. 11[C][2][a] requires a trial court to advise a criminal defendant on postrelease control for a prior felony, during his plea hearing in a new felony case, of the trial court's authority under R.C. 2929.141 to terminate the defendant's existing postrelease control and to impose a consecutive prison sentence for the postrelease-control violation"). Therefore, finding no merit to any of Carr's arguments raised herein, Carr's second assignment of error also lacks merit and is overruled.

{¶ 28} Judgment affirmed.

PIPER, P.J., and HENDRICKSON, J., concur.