[Cite as *State v. Toler*, 2026-Ohio-222.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO. CA2025-06-063 |
| Appellee, | : | |
| | | <u>OPINION AND</u> |
| vs. | : | <u>JUDGMENT ENTRY</u> |
| | | 1/26/2026 |
| JAMES RAYMOND TOLER, JR., | : | |
| | | |
| Appellant. | : | |
| | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2024-04-0545


Michael T. Gmoser, Butler County Prosecuting Attorney, and John C. Heinkel, Assistant Prosecuting Attorney, for appellee.

Susannah M. Meyer, for appellant.


# **O P I N I O N**

**SIEBERT, J.**

{¶ 1} James Toler appeals the judgment and sentence imposed by the Butler County Court of Common Pleas after pleading guilty to aggravated possession of drugs. On appeal, Toler argues he did not make a knowing, intelligent, and voluntary plea

because the trial court failed to advise him of the maximum penalty he faced under Ohio law. Specifically, Toler asserts the trial court did not inform him that should he commit a new felony while on postrelease control, a sentencing court could revoke his postrelease control and impose an additional prison term served consecutively to any prison time imposed for the new felony. Toler also makes a perfunctory argument—which we therefore will not consider—that his indefinite sentence imposed under the Reagan Tokes Law is unconstitutional. Upon review, and consistent with this district's precedent, we again conclude trial courts are not required to inform a pleading defendant of the implications a hypothetical future offense could have on the offender's postrelease control for the current offense. Such advisements cannot reasonably be required to properly inform defendants of the "maximum penalty" they face when pleading guilty.

**Background**

{¶ 2} The Butler County Grand Jury indicted Toler with a single count of aggravated possession of drugs (methamphetamine), a second-degree felony. While proceedings for that charge were pending, law enforcement again arrested and charged Toler with another drug possession charge. Pursuant to plea negotiations, Toler agreed to enter a plea of guilty for the first aggravated possession of drugs charge, and the State dismissed the second charge. Before accepting his plea, the following exchanges occurred:

> COURT: Do you understand that this prison sentence [and subsequent postrelease control] is mandatory? I have no option to sentence you to probation or community control; do you understand that?
>
> TOLER: Yes, sir.
>
> COURT: So first, you can say for certain, standing here, if you enter a plea of guilty, that how much time will you serve in prison for sure?

- 2 -

TOLER: Minimum two years.

COURT: Absolutely. Absolutely mandatory; you understand that?

TOLER: Yes, sir.

. . .

COURT: And I've already told you the prison sentence is mandatory; do you understand that?

TOLER: Yes.

. . .

COURT: Do you understand all the trial rights we've just explained to you?

TOLER: Yes.

COURT: You understand that the sentence is mandatory?

TOLER: Yes.

. . .

COURT: All right. The Court's going to order a pre-sentence investigation report. There's no sense ordering a [community control] evaluation. It's a mandatory prison sentence. Mr. Toler, you need to have your affairs in order when you return here on May 22nd. Have you been to prison before?

TOLER: Yes. About 30 years ago, when I was 18.

COURT: All right. So I don't have to worry about you –

TOLER: No, sir.

COURT: —being too distraught over all this?

TOLER: No, sir.

. . .

{¶ 3} At sentencing, Toler's counsel advised the trial court that Toler once believed there was an opportunity for treatment but, counsel "explained . . . that the prison term is mandatory, and that's not really an available option. Because of that, [Toler]

- 3 -

now certainly understands he's going to have to do a prison term. We'd ask the Court to impose a minimum term at this time." In addition, Toler stated at sentencing that when arrested, the arresting officer expressed to Toler that she was not opposed to him being sentenced to treatment. Ultimately, the trial court sentenced Toler to a four-to-six-year indefinite sentence with post release control. Importantly, Toler was not on post release control for any previous offense when he pled guilty.

{¶ 4} Toler now appeals.

**First Assignment of Error – Knowing, Intelligent, and Voluntary Plea**

*Pleas and Crim. R. 11*

{¶ 5} A guilty plea is a "complete admission of the defendant's guilt." Crim.R. 11(B)(1). As a result, "[a] criminal defendant's choice to enter a guilty plea is a serious decision." *State v. Bishop*, 2018-Ohio-5132, ¶ 10. "When a defendant enters a guilty plea in a felony criminal case, the plea must be knowingly, intelligently, and voluntarily made." *State v. Smith*, 2020-Ohio-3074, ¶ 7 (12th Dist.). If it is not, the plea is unconstitutional. *Bishop* at ¶10. Therefore, in order to safeguard the defendant's rights, trial courts are required to cover various topics with a defendant before accepting a guilty plea. Crim.R. 11(C); *Bishop* at ¶ 11.

{¶ 6} For example, the trial court must advise offenders that pleading guilty results in a waiver of constitutional rights such as the right to a jury trial, to confront witnesses testifying against the offender, and of the State's burden to prove the offender's guilt beyond a reasonable doubt. *See id.*, citing Crim. R. 11(C)(2)(c). A trial court's failure to advise defendants of their constitutional rights results in the plea being presumptively unconstitutional. *State v. Dangler*, 2020-Ohio-2765, ¶ 14.

{¶ 7} In addition to advising defendants of the constitutional rights they waive by pleading guilty, trial courts must also, as relevant here, advise pleading offenders "of the

nature of the charges and of the maximum penalty involved" before accepting their plea of guilty. Crim. R. 11(C)(2)(a). This includes advising defendants of whether they are subject to supervision by Ohio's parole board after being released from prison ("postrelease control"). *See generally,* R.C. 2967.28. If a defendant commits a felony while on postrelease control for a prior committed felony, trial courts may revoke the postrelease control and impose a prison term that must be served consecutively to any prison term for the newly committed felony. R.C. 2929.141(A)(1). A trial court's "complete failure" to advise a defendant of nonconstitutional rights or obligations, including how postrelease control violations affect the "maximum penalty" the defendant faces, will result in the plea being presumptively unconstitutional. *Dangler* at ¶ 15-17.

{¶ 8} Aside from a trial court's failure to explain constitutional rights or its *complete* failure to explain nonconstitutional rights, a defendant must demonstrate prejudice stemming from the court's purported failure to comply with Crim.R. 11(C) in order to set aside a plea. *Id.* at ¶ 16. "The test for prejudice is 'whether the plea would have otherwise been made.'" *Id.* at ¶ 16, quoting *State v. Nero*, 56 Ohio St.3d 106, 108 (1990).

*Did the Trial Court Inform Toler of the "Maximum Penalty" He Faced?*[1]

{¶ 9} Toler first asserts the trial court failed to inform him of the "maximum penalty" he faced by pleading guilty to aggravated possession of drugs because the trial court did not inform him that if he committed a felony after being released from prison and while on postrelease control, the trial court could revoke his postrelease control and impose a mandatory prison term to be served consecutively to the prison sentence for the subsequent offense. Toler argues this constitutes a "complete failure" to comply with

---

1. Toler raises three issues for this court's consideration within his first assignment of error. Finding the first two issues are interrelated and essentially the same, we consider them together.

Crim.R. 11(C)(2)(a), making his plea unconstitutional.

{¶ 10} As Toler acknowledges, this district previously concluded that a guilty plea remains valid even when the trial court does not notify a defendant—who is not already on postrelease control for a prior offense—that if the defendant commits a new felony when on postrelease control, the court may terminate postrelease control and impose an additional, consecutive prison term for the postrelease control violation. *State v. Carr*, 2021-Ohio-1983, ¶ 27 (12th Dist.), citing R.C. 2929.141(A)(1). *See also State v. Stewart*, 2021-Ohio-3600, ¶ 23 (8th Dist.), citing *Carr*.

{¶ 11} Despite this, Toler asserts our court's precedent is "outdated" and urges us to reconsider it, citing various cases from the Ohio Supreme Court and other Ohio appellate districts. *See e.g. State v. Bishop*, 2018-Ohio-5132; *State v. Nix*, 2019-Ohio-3886 (8th Dist.). In *Bishop*, the trial court informed the defendant it could place him on postrelease control for the felony he was currently pleading guilty to and that if he violated the terms of that postrelease control, the court could sentence him to additional time in prison. *Id.* at ¶ 3. However, the trial court did not inform Bishop that if he pled guilty for the current felony, the court could terminate the postrelease control Bishop was already serving for a prior felony and make him serve an additional, consecutive prison term to any prison sentence imposed for the current felony. *Id.* Because the trial court "completely failed" to inform Bishop of the possibility of an additional, consecutive sentence, the Court deemed his plea presumptively unconstitutional. *Id.* at ¶ 20. *Nix* similarly held that a sentencing court must advise an offender already on postrelease control for a prior felony conviction that pleading to the current offense can result in the imposition of a consecutive prison sentence for the prior offense. *Nix* at ¶ 17-19.

{¶ 12} Toler's argument on appeal ignores that, unlike himself, both Bishop and Nix were already on postrelease control for a prior felony when they pled guilty to a felony

committed later. *Bishop* and *Nix* are therefore inapplicable here. In practice, Toler's position would have required the trial court to advise him that if (1) Toler committed a felony while on postrelease control for his drug possession conviction in this case, *and* (2) the trial court opted to terminate his postrelease control due to his commission of the later felony, that (3) the trial court must then impose an additional prison term for the revoked postrelease control to be served consecutively to the prison term for the future felony. As we held in *Carr*, such an advisement is not required to inform a defendant of the "maximum penalty" faced, as this would essentially require courts to inform pleading offenders of the consequences of events that, at the time of the plea, are completely speculative.[2] After all, if Toler does not violate his postrelease control by committing another felony, none of these sentencing consequences will come to fruition.

{¶ 13} Moreover, a trial court would still be required to advise Toler before accepting a plea of guilty to any subsequent offense that the trial court could choose to revoke his postrelease control for his aggravated possession charge (assuming he is still on postrelease control when the subsequent offense occurred) and make him serve prison time consecutive to any time ordered for the subsequent offense. In both *Bishop* and *Nix*, the trial court's authority to terminate each offender's pre-existing postrelease control was not theoretical during the sentencing hearings for the subsequent felonies

---

2. Toler's counsel referenced federal case law during oral argument and offered to provide supplemental briefing on the law referenced. The court approved this briefing; Toler's counsel filed this supplemental authority, and the State responded. However, Toler's arguments here are hindered, not helped, by this federal authority. The Fourth Circuit made clear that a defendant must be "made aware of all the direct, but not the collateral, consequences of his plea." United States v. King, 91 F.4th 756, 790 (4th Cir. 2024) (analyzing federal rules concerning federal supervised release). The Fourth Circuit's point is ours. "Direct" consequences are definite; "collateral" consequences are indefinite. Toler's consequences are quintessentially indefinite. If he commits a subsequent felony, and if his PRC is then revoked, and if he is then sentenced to prison, then any prison sentence for the PRC violation must then be served consecutively to the prison sentence for the subsequent felony. R.C. 2929.141(A). Toler's potential sentencing consequences are not only speculative but also completely within his control. If he does not commit any subsequent felony, none of these speculative sentencing consequences will apply.

because those violations of their already existing postrelease control triggered that authority.

{¶ 14} For these reasons, we conclude that informing a pleading defendant of a theoretical sentence based upon hypothetical events occurring sometime in the future cannot reasonably be considered part of the "maximum penalty involved" in Toler's sentencing for this drug possession charge. *See also State v. Stewart*, 2021-Ohio-3600, ¶ 23 (8th Dist.), citing *Carr* ("[T]he trial court was not obligated to advise Stewart of the potential implications of . . . hypothetically commit[ting] a future felony offense while under postrelease control"). Toler cannot demonstrate that if he had been advised in this manner that he would not have pled guilty to aggravated possession of drugs.

*Did the Trial Court Inform Toler of the Mandatory Prison Sentence?*

{¶ 15} Toler also argues he did not enter a knowing, intelligent, and voluntary plea because he believed that the court could order a community control sanction, including substance abuse treatment, instead of imposing a mandatory prison sentence. Toler's argument on appeal is based upon the arresting police officer's statement to Toler that she was not opposed to him being sentenced to treatment.

{¶ 16} The record does not support Toler's argument. Transcripts from Toler's plea and sentencing hearings, quoted above, quickly reveal that the trial court and counsel advised Toler many times before he plead guilty and before he was sentenced that a prison term was mandatory and that community control and treatment were not options. Upon review, the statements of Toler and his counsel at sentencing are best viewed as last-ditch plea for leniency.

{¶ 17} We overrule Toler's first assignment of error in its entirety.

**Second Assignment of Error – Reagan Tokes**

{¶ 18} In his second assignment of error, Toler makes a perfunctory argument that

the Reagan Tokes Law is unconstitutional. Generally speaking, the Reagan Tokes Law requires indefinite sentences for certain first- or second-degree offenders. *See generally* R.C. 2967.271. However, Toler did not assert his constitutional argument at the trial court and does not state on appeal how the law violates the United States and Ohio Constitutions. Appellants bear the burden of affirmatively demonstrating error on appeal and substantiating his or her arguments in support thereof. *Ostigny v. Brubaker*, 2024-Ohio-384, ¶ 38 (12th Dist.). It is not an appellate court's duty to "root out" or develop an argument that can support an assigned error, even if one exists. *Lebanon v. Ballinger*, 2015-Ohio-3522, ¶ 27 (12th Dist.).

{¶ 19} We overrule Toler's second assignment of error.

{¶ 20} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.

- 10 -

---

# J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robert A. Hendrickson, Presiding Judge

/s/ Mike Powell, Judge

/s/ Melena S. Siebert, Judge